### DRAKELEY and another *against* DEFOREST and others.

A deed of assignment of goods, not identifying them, and referring only to a non-existing schedule, for a description of them, is invalid as an instrument of conveyance.

But such a deed, containing a declaration of the trust, under which the goods were intended to be assigned, may be effectual to declare the trust.

Where the assignor named in such a deed, subsequent to its execution and delivery, delivered certain goods, with an inventory of them, to the assignees, for the security and satisfaction of certain *bona fide* debts, and the assignees accordingly took possession of the goods and writings ; it was held, that from these facts, the jury might presume a re-delivery of the deed ; but if otherwise, such deed, being effectual as a declaration of trust, and the reception of the goods, by the assignees, being an assumption of that trust, constituted a sufficient consideration for the assignment.

The undertaking of such assignees, implied in their acceptance of the trust, is not a promise to answer for the debts of another, within the statute of frauds and perjuries.

This was an action of trespass for taking and carrying away divers goods and chattels, the property of the plaintiffs, and in their possession.

The cause was tried at *Litchfield, February* term, 1820, before Ch. J. *Hosmer.*

The plaintiffs claimed title to the goods in question as the assignees of *John P. Marshall ;* the defendants justified the taking, by virtue of attachments at the suit of *Bradley & Whiting,* creditors of *Marshall ;* and the question was, whether such goods were the property of the plaintiffs, or of *Marshall,* at the time the attachments were served.

On the 25th of *December,* 1816, *Marshall* executed to the plaintiffs a deed of assignment of goods, wares and merchandize, in trust for the security and payment of certain *bona fide* demands existing against him. This deed did not identify the property assigned, by specification or description ; but referred to a schedule, which, however, did not then exist. The attachments were served on the 28th of the same month.

The plaintiffs introduced testimony to prove, and claimed that they had proved, that at the time of the delivery of the deed of assignment, *Marshall,* by a parol agreement with the plaintiffs, sold and conveyed to them, for the uses and trusts specified in such deed, all the articles mentioned in an inventory exhibited, comprising the goods in question ; and that immediately thereupon, *viz.* on the same day, the plaintiffs took possession of the articles, by the direction of *Marshall,* in pursuance of such agreement, and proceeded to take an inventory of them, which they completed on the 26th, and annexed it to the deed of assignment. A few articles, not including any of the goods attached by *Bradley & Whiting,* were added, and some alterations in the caption and phraseology of the inventory were made, by the joint consent of *Marshall* and the plaintiffs, after the service of the attachments. The articles were also appraised, and the prices carried out, in the inventory, after the service of the attachments. This, also, was done, as the plaintiffs claimed, by the joint consent of *Marshall* and them.

There were certain papers accompanying the inventory, among which were a list of balances due on *Marshall's* books, and a schedule of the notes assigned, in which there were some erasures ; but it did not appear whether these papers were delivered, nor whether the erasures were made, before

35

*Litchfield,*
June,
1820.

*Drakeley*
*v.*
*Deforest.*

or after the service of the attachments. The plaintiffs, however, claimed to have proved, that the inventory and other papers were kept together, and were, at all times, ready to be inspected, by any person, who might have an interest therein; and that the defendants actually saw the inventory, and some of the other papers, in the hands of the plaintiffs, before they had their attachments served.

The plaintiffs contended, that the inventory was a paper made out for the mere convenience of the parties, and constituted no part of the deed of assignment; and that the title to the property could not be defeated, by the alterations made in that paper; but if it were essential to the plaintiffs' claim, a re-delivery of it, and of the articles therein specified, might fairly be presumed from the facts proved in the case.

The defendants claimed, that the deed of assignment, and the inventory and papers therein referred to, constituted but one instrument, of which no delivery was shewn prior to the service of the attachments; that the alterations posterior to the attachments destroyed the plaintiffs' title, whether they were made with the joint consent of *Marshall* and the plaintiffs, or not; and that the transfer of the property to the plaintiffs was, *per se*, fraudulent and void, being without consideration.

The judge in his charge to the jury, having stated the case, and claim of the plaintiffs, proceeded thus: " It is objected by the defendants, that the assignment and transfer of the goods, from the nature of the transaction, and the facts exhibited in evidence, was a fraud on creditors. This is a question of *fact*, for you to determine. If the goods were assigned and delivered to the plaintiffs, with a view to defraud the creditors of *Marshall*, and to keep them out of the reach of legal process, the transaction was, unquestionably, fraudulent and void.

" It is next objected, that the deed of assignment, when delivered on the 25th of *December*, referring to schedules, which had no existence, and not having identified the goods, was an invalid instrument. This is undoubtedly correct; and if this were the whole of the plaintiffs' case, I should direct a verdict for the defendants, on that ground.

" It is contended by the plaintiffs, that the goods intended to be assigned were delivered to them, and that the inventory of them in proof was made out as soon as it could convenient-

ly be done, with the assent of *Marshall*, and before the defendants' attachment; it being admitted, that the debts, in security of which the property was assigned, were *bona fide*. If you find these facts, the plaintiffs acquired a title to the goods, unless you shall find that the conveyance of them was made to defraud creditors.

" The alterations in the inventory and schedules, made posterior to the attachments, if done with the assent and approbation of *Marshall*, although they cannot divest *Bradley & Whiting* of any right they had acquired, yet they do not invalidate the assignment or conveyance of the goods, made before the attachments were levied upon them."

The jury returned a verdict for the plaintiffs; and the defendants moved for a new trial, on the ground of a misdirection.

*Sherman* and *Bacon*, in support of the motion, contended, 1. That aside from the deed of assignment, which was declared void, there was no declaration of a trust; and the transfer of the property to the plaintiffs was, therefore, without consideration, and, in contemplation of law, fraudulent, though not accompanied with an intention to defraud creditors. Whether a parol agreement, embracing a declaration of trust, was made, was not a question submitted to the jury; but the judge instructed them, that if they found two facts, *viz.* the delivery of the goods, and the making of the inventory before the service of the attachments, the title of the plaintiffs was valid.

2. That if this question had been submitted, and found for the plaintiffs, still a parol assignment to them, as trustees for the payment of debts, could not, in this case, be supported. First, because the plaintiffs took possesion under the deed of assignment, on the 25th of *December*; and they must be confined to that deed, in making out their title. *Doe* d. *St. John* v. *Hore*, 2 *Esp. Rep.* 725. *Brewer* v. *Palmer*, 3 *Esp. Rep.* 213. *The King* v. *St. Paul's Bedford*, 6 *Term Rep.* 452. Secondly, because it would be within the statute of frauds and perjuries, as an agreement to pay the debts of another person. *Turner* v. *Hubbell*, 2 *Day* 457. *Rothery* v. *Curry*, cited 3 *Burr.* 1887. *Buckmyr* v. *Darnall*, 2 *Ld. Raym.* 1085. *Fish* v. *Hutchinson*, 2 *Wils.* 94.

3. That the assignment could not be supported, by presuming a re-delivery of the deed, after the inventory was completed, and the alterations and erasures were made; for there were no facts from which such presumption could arise.

*Benedict* and *J. W. Huntington*, contra, contended, 1. That the assignment was not fraudulent *per se*, for want of consideration. For, first, the deed, though inoperative as an instrument of conveyance, for uncertainty in the description of the property intended to be conveyed, might be good as to the declaration of trust, with regard to which there was no uncertainty. Secondly, the verdict of the jury, under the direction given them, in connexion with the uncontroverted facts of the case, has established the delivery of the goods, together with the time, and the *object*, of such delivery. The trust is not now dependent upon the deed of assignment for support.

2. That if, in pursuance of the understanding of the parties, while *Marshall* had the controul of his property, and the power to dispose of it, schedules of the property were made out, executed, and delivered to the plaintiffs, before the service of the attachments,—facts which must now be considered established,—such schedules became a part of the deed of assignment; and if it were necessary, a re-delivery of the deed itself, with the schedules, might and ought to be presumed.

3. That the plaintiffs' title to the property was not defeated, by the alterations in the inventory *after* the service of the attachments. First, the inventory was a mere memorandum of the property, made for the convenience of the parties, and could not affect the title. Secondly, if the instrument, whatever it was, was good to hold the property in the hands of the plaintiffs, when the defendants attached it, a subsequent alteration of that instrument could not defeat the plaintiffs' right of recovery for the taking. Thirdly, the alterations were made with the consent of all the parties to the assignment; and they were only such as enlarged the grant, and related to articles not attached by the defendants. To support their objection, the defendants must shew, that it was not in the power of the parties, by their mutual agreement, either to vary the instrument, or to make any additions to it; a position altogether unfounded, and opposed by the most respectable authorities.

*Paget* v. *Paget*, 2 *Chan. Rep.* 187.   *Hunt*, admr. v. *Adams*, 6 *Mass. Rep.* 519.   *Smith* v. *Crooker* & al. 5 *Mass. Rep.* 538.

4. That the undertaking of the plaintiffs, implied in their acceptance of the trust, was not a promise to answer for the debts of another, within the statute of frauds and perjuries.

HOSMER, Ch. J.   The deed of assignment, in this case, was invalid, as it referred to a non-existing schedule, in which the property intended to have been transferred was supposed to have been specified.

From the admissions at the trial, and the verdict of the jury, on the charge given, it must be assumed, that the goods and chattels in question, for the security and satisfaction of certain *bona fide* debts, were delivered to the plaintiffs, with an inventory or schedule, made by *Marshall*, before the levy of the defendants' attachments.   At this time, the deed of assignment was in the plaintiffs' hands.   On these facts, the jury might have been directed to presume a re-delivery of the deed of assignment; and this annihilates every objection.

The case may be viewed in a different light.   The goods in question, with an inventory of them, and a writing amounting to a declaration of trust, were delivered to the plaintiffs, to be disposed of, and pay the specified debts of certain persons named.   This, being a transaction *bona fide*, and with the assent of the creditors, constitutes a transfer of the property.   The reception of the goods and chattels by the plaintiffs, legally obliges them to perform the duty assumed ; and the suggestion of want of consideration is without any support.

It has been contended, that the agreement between *Marshall* and the plaintiffs was within the statute of frauds and perjuries, on the supposition that the promise was to pay the debts of another person.   The case has no relation to the statute of frauds.   The delivery of the goods to the plaintiffs constituted a distinct and sufficient *res gesta*, on which to sustain the action.   The engagement made by the plaintiffs was to deliver over property received to certain persons named ; and the nature of the transaction is the same as if, instead of paying debts, the avails of the goods were to undergo another transmission.   The principle is stated in *Castling* v. *Aubert*, 2 *East*, 325.   And it is justly said, by Serjt. *Williams*, in a note in *Saunders*, " that where the promise is founded upon some *new* consideration, sufficient in law to support it, and is

*Litchfield,*
*June,*
*1820.*

*Drakeley*
*v.*
*Deforest.*

not merely for the debt, &c. of another, such an undertaking, though it be in effect to answer for another person, is considered as an *original* promise, and not within the statute : as where *A.* promises *B.* to pay him a sum of money, in case he will withdraw his record in an action of assault and battery." 1 *Saund. Rep. by Wms.* 211. *a.*    *Read* v. *Nash*, 1 *Wils.* 305. *Stephens* v. *Squire*, 5 *Mod.* 205.    *Williams* v. *Leper*, 3 *Burr.* 1886.

The other Judges were of the same opinion.

New trial not to be granted.