FIRST NATIONAL BANK OF ATTLEBORO, MASSACHUSETTS, Respondent, *v.* JOHN HUGHES ET AL., Appellants.

February 23, 1881.

1. Where land is attached in a proceeding in which the defendant is a non-resident, is not served with process, and does not appear, and afterwards, in the same suit, a judgment is rendered for a sum which, upon the face of the record, appears to be a greater sum than the amount mentioned in the writ of attachment, the judgment is not void for want of jurisdiction, and cannot be attacked in a collateral proceeding.

2. The statute law of another State can have no effect upon the devolution of title to real estate situated in this State.

3. A deed of assignment which recites that the assets of the assignor are three times greater than his liabilities, and which clothes the assignees with great discretionary power, is voidable as tending to hinder, delay, and defraud creditors.

4. Where a deed, good *inter partes*, is made and delivered to a *bona fide* purchaser for value, before the date of the levy of an attachment upon the property conveyed, and is recorded before the sale and sheriff's deed to the purchaser, it will have precedence over the attachment.

5. The assignee in a deed of assignment for the benefit of creditors is not a mere volunteer. The assumption of the trust is a valuable consideration.

6. A notary public who has taken an acknowledgment may correct his certificate so as to make it show the facts, without having the parties again appear before him.

7. A deed of assignment which conveys, in general terms, all the property of the assignor, wherever situate, is not void for uncertainty.

8. The execution of a deed, good *inter partes*, which is subsequently impeached by creditors, does not disable the grantor from making a second valid deed of the same property to the same grantees.

9. Where illegal trusts are declared in a deed, and a valid deed of the same property and to the same grantees is subsequently made, the latter is in effect a rescission of the former.

10. Assignments for the benefit of creditors may be revoked or corrected at any time before the rights of the creditors have become fixed under them.

11. Where a deed of assignment, void in the State where made, but effectual to pass title to land situated in this State, was delivered in the State where made, prior to the levy of an attachment upon the land in this State, at the suit of a citizen of a third State, and recorded here prior to the issue of execution and sale under a judgment in the attachment, the title of the grantee in the deed of assignment is superior to that of the purchasers in the attachment.

APPEAL from the St. Louis Circuit Court, ADAMS, J.

*Reversed, and judgment.*

NOBLE & ORRICK, for the appellants : The judgment on the attachment proceedings was void, because the property of appellants was attached to satisfy a debt of $1,056.65, and such attachment did not authorize a judgment for $5,322.38. — Drake on Attach., sect. 5 ; *Freeman* v. *Thompson*, 53 Mo. 196 ; *Cooper* v. *Reynolds*, 10 Wall. 308 ; *Voorhees* v. *Bank*, 10 Pet. 449 ; *Williams* v. *Stewart*, 3 Wis. 773 ; *Beach* v. *Abbott*, 6 Vt. 586 ; *Porter* v. *Partee*, 7 Humph. 168. The deeds from Sackett and others to appellants Gardner and others, of date March 21, 1879, and from George H. Sackett to appellants Gardner and others, of date March 22, 1879, conveyed the title to the property to them, and they now hold the same free of the lien of the attachment and judgment thereon in favor of respondent. — *Frost* v. *Wilson*, 70 Mo. 664 ; Drake on Attach., sect. 234 ; Burrill on Assign. 538 ; *Stevenson* v. *Pemberton*, 1 Dall. 4 ; *De Peyster* v. *Gould*, 3 N. J. Eq. 481 ; *Finch* v. *Winchester*, 1 P. Wms. 277 ; *Sappington* v. *Oeschli*, 49 Mo. 244 ; *Stillwell* v. *McDonald*, 39 Mo. 282 ; *Potter* v. *McDowell*, 43 Mo. 93 ; *Reed* v. *Ownby*, 44 Mo. 204 ; *Davis* v. *Owenby*, 14 Mo. 170 ; *Valentine* v. *Havener*, 20 Mo. 133 ; *Gates* v. *Labeaume*, 19 Mo. 17.

J. B. WOODWARD and W. W. DEDRICK, for the respondent: The instruments upon which appellants claim title were not recorded in Rhode Island until after respondent's attachment. By the statute of Rhode Island, all conveyances are absolutely void until recorded. Therefore the assignments in question are subordinate to respondent's attachment lien. — Gen. Stats. R. I. 1872, pp. 349, 350, sect. 314; *Richards* v. *Randolph,* 5 Mason, 115; *Thurber* v. *Dwyer,* 10 R. I. 357. The doctrine relied on by the appellants is based upon the ground of the superior equity of the *bona fide* purchaser or mortgagee. This equity does not exist in favor of a voluntary assignee. — *Davis* v. *Owenby,* 14 Mo. 170; *Valentine* v. *Havener,* 20 Mo. 133; *Stillwell* v. *McDonald,* 39 Mo. 282; *Potter* v. *McDowell,* 43 Mo. 93; *Reed* v. *Ownby,* 44 Mo. 204; *Aubuchon* v. *Bender,* 44 Mo. 560; *Sappington* v. *Oeschli,* 49 Mo. 244. The acknowledgments are fatally defective, being made in the absence of the grantors, without reacknowledgments, two months after the instruments had been completed by delivery and recorded in Rhode Island. — Bouv. L. Dic. (14th ed.), tit. "Acknowledgment;" *O'Ferrall* v. *Simplot,* 4 Iowa, 381; Gen. Stats. Mo., p. 445, sects. 13, 14; p. 447, sect. 26; Rev. Stats., sects. 680, 681, 693. Although the said deed is fraudulent on its face, and voidable by creditors, it is valid and binding between the parties, and, as between said parties, operated to pass the title out of said assignors. It follows, therefore, that on the 21st and 22d of March, 1879, when said Sackett, Davis & Co. made the alleged conveyances under which appellants claim title, said assignors had no right, title, or interest in the property in question. The said pretended deeds fall for lack of subject-matter. They cannot be operative, as there is nothing for them to operate upon. — *Gates* v. *Andrews,* 37 N. Y. 657; *Porter* v. *Williams,* 5 Seld. 142; *Brownell* v. *Curtis,* 10 Paige, 210; *Metcalf* v. *Van Brunt,* 37 Barb. 621; *Potter* v. *Williams,* 12 How. Pr. 109; *Dean* v. *Smith,* 1 Mason,

277. The plaintiff claims title by virtue of the sheriff's deed. The judgment cannot be attacked nor the validity of said deed questioned in a collateral proceeding. — *Hardin* v. *Lee*, 51 Mo. 241; *Freeman* v. *Thompson*, 53 Mo. 183; *Holland* v. *Adair*, 55 Mo. 40; *Rumfelt* v. *O'Brien*, 57 Mo. 569; *Herndon* v. *Hawkins*, 65 Mo. 265. The sections of the statute cited by appellants relating to the duty of the sheriff to record an abstract of the attachment, etc., do not affect the regularity of the levy. These provisions are not essential to the levy, and their omission does not avoid it. — *Durant* v. *Hall*, 38 Mo. 346; *Lackey* v. *Seibert*, 23 Mo. 85; *Huxley* v. *Harrold*, 62 Mo. 516.

THOMPSON, J., delivered the opinion of the court.

On the twenty-ninth day of March, 1879, the plaintiff sued out an attachment in the Circuit Court of St. Louis against George H. Sackett, Thomas Davis, Laureston Towne, and George P. Tew, composing a partnership firm under the style of Sackett, Davis & Co., residing and doing business in Providence, Rhode Island. The petition was in the ordinary form, on a note for $5,000, with interest. The affidavit for attachment recited the demand set forth in the petition, stated that it amounted to $5,056.65, and stated that the defendants were non-residents of the State. The attachment, however, by some clerical error, no doubt, commanded the sheriff to attach so much of the lands and tenements, goods, chattels, moneys, etc., of the defendants as should be sufficient to secure the sum of $1,056.65. The sheriff levied the attachment upon the lot of land in controversy, and made return thereof, including a return of "not found" as to the defendants. Publication was made in conformity with the statute, the order of publication reciting a demand upon the promissory note set out in the petition, and stating the demand at the sum laid in the affidavit for attachment, namely, $5,056.65. The defendants not appearing, judgment was rendered against them by

default on June 5, 1879, in the sum of $5,322.38.   Under this judgment a special execution issued against the property so attached, under which the sheriff, after due advertisement, sold the property to the plaintiff for the sum of $10, he being the highest and best bidder.   The plaintiff thereupon brought this suit in ejectment for possession.   Judgment was rendered in the plaintiff's favor in the court below, and the defendants appeal.

1. The first question relates to the validity of the attachment.   When the record in that suit was offered in evidence, the defendants objected to the same, for the reason that it appeared from the writ of attachment that by it the sheriff was commanded to attach property of the defendants for a debt not sued on.   The court overruled this objection, and the defendants excepted.

This presents distinctly the question whether, where land is attached in a proceeding in which the defendant is a nonresident, is not served with process, and does not appear, and afterwards, in the same suit, a judgment is rendered for a sum which, upon the face of the record, appears to be a greater sum than the amount mentioned in the writ of attachment with interest and costs, the judgment is void for want of jurisdiction, so that it can be attacked in a collateral proceeding.   After a patient examination of this question, we answer it in the negative.   We fully concede the positions taken by the appellants' counsel in his argument. We agree with him that the central fact which gives jurisdiction in an attachment suit is a levy upon property of the debtor under a valid writ of attachment.   *Hardin* v. *Lee*, 51 Mo. 241; *Freeman* v. *Thompson,* 53 Mo. 183, 194; *Holland* v. *Adair*, 55 Mo. 40, 49; *Cooper* v. *Reynolds*, 10 Wall. 308, 319.   But where a court thus acquires jurisdiction, it does not lose it by reason of any errors which it may subsequently commit.   The case is analogous to that where a defendant is brought into court by a service of process, and a judgment is subsequently rendered against him for a greater

amount than that demanded in the petition, together with interest and costs. In such a case no court would hold the judgment void for want of jurisdiction, in a collateral proceeding. While there can be little doubt that this defect would be sufficient to reverse the judgment, upon appeal or writ of error (*Henrie* v. *Sweasie*, 5 Blackf. 273; *Rowley* v. *Berrian*, 12 Ill. 198: *Hichins* v. *Lyon*, 35 Ill. 150; *Hobson* v. *Emporium, etc., Co.*, 42 Ill. 306; *Forsyth* v. *Warren*, 62 Ill. 68), yet it seems equally clear, upon principles well settled, and frequently recognized by our Supreme Court, that a judgment is not open to collateral attack for this reason. *Voorhees* v. *Bank*, 10 Pet. 449; *Beach* v. *Abbott*, 6 Vt. 586; *Cochran* v. *Loring*, 17 Ohio, 409. There was, therefore, no error in receiving the sheriff's deed in evidence, against the objection of the defendants.

2. After the plaintiff had closed his case, the defendants offered in evidence —

(1.) A deed from George H. Sackett and the other members of the firm of Sackett, Davis & Co. to Henry W. Gardner, Lodowick Brayton, and Joseph B. Matthewson, executed at Providence, Rhode Island, on March 21, 1879, and recorded at Providence, Rhode Island, on March 25, 1879, and at St. Louis, Missouri, on May 27, 1879, conveying all their real and personal estate of every description, wherever situated, in trust for the equal benefit of their creditors.

(2.) Also, a deed from George H. Sackett, one of the defendants in the above attachment-suit, and a member of the firm of Sackett, Davis & Co., to the same persons, executed at Providence, Rhode Island, on March 22, 1879, and recorded at Providence, Rhode Island, on March 25, 1879, and at St. Louis, Missouri, on May 27, 1879, conveying all his estate and property of every description, wherever situated, not exempt from attachment by law, in trust for the equal benefit of his creditors. The defendants Gardner, Brayton, and Matthewson also offered evidence

showing that the two last-mentioned deeds were delivered to them and accepted by them on March 22, 1879, which was anterior to the levy of the attachment.

In rebuttal, the plaintiff, for the purpose of showing that at the time when George H. Sackett and the other members of the firm of Sackett, Davis & Co. executed these two deeds they had no title to the land in controversy, offered in evidence a deed executed by the members of the firm of Sackett, Davis & Co. to the same persons, dated December 5, 1878, conveying all their real and personal estate, of whatever description, upon certain trusts hereinafter mentioned. This deed was never recorded in St. Louis, and the defendants do not claim under it.

In explanation of these transactions, it is shown that Sackett, Davis & Co. were a firm of merchants in Providence, Rhode Island ; that the land in controversy was partnership assets, but was held, for convenience, in the name of Sackett ; that, the firm becoming embarrassed, the members of the firm, on December 5, 1878, executed a deed of assignment to Gardner, Brayton, and Matthewson, upon certain trusts, for the security of the creditors of the firm and for the benefit of the assignors ; that several of their creditors, deeming this deed of assignment fraudulent as to them, levied attachments upon the property conveyed by it ; that the members of the firm of Sackett, Davis & Co., thereafter concluding that the deed was invalid by reason of the reservations in favor of themselves, sought to validate it by executing the two second deeds, under which the defendants claim, to the same assignees.

The plaintiff claims that under the laws of Rhode Island both the former and the two latter deeds are absolutely void, and hence they could not be operative to convey land in Missouri. It is a mistake to suppose that the law of Rhode Island can have any effect whatever upon the devolution of title to real estate situated in Missouri. It is a principle recognized and inflexibly applied in every country governed

by the common law, that the transfer of real property is exclusively governed by the law of the *situs rei*, whether in relation to the capacity of the owner to transfer, the solemnities necessary to a valid transfer, or the title of the transferee. Story on Confl., sects. 424, 430, 435, 445; Burrill on Assign., sect. 304. In a recent case the Supreme Court of Illinois declared this principle and applied it to the deed of December 5, 1878, here in question, holding it void as to creditors under the law of Illinois. *Gardner* v. *Bank*, 95 Ill. 298; *s. c.* 10 Reporter, 300.

We are therefore to determine whether, under the law of Missouri, this deed of the members of the firm of Sackett, Davis & Co. was void as to creditors. In determining this question, we have the advantage of two adjudications of respectable courts of other States upon the same subject-matter. The Supreme Court of Illinois held the deed void under the law of that State, as just stated. The Supreme Court of Rhode Island, in the recent case of *Gardner* v. *Bank*, published in the *Providence Journal* of December 20, 1880, has reached the same conclusion, and upon the same grounds. The reasoning of these two courts seems conclusive. They proceed upon the ground that the deed recites that the assets of Sackett, Davis & Co. amount to about three times their indebtedness, and that it clothes the trustees with discretionary power to carry on the business of the firm " for such time as the trustees shall deem for the best interest of the creditors, and necessary for the purpose of preventing shrinkage and loss, and of closing out and liquidating the same to the best advantage." It cannot be doubted that a deed made with such extensive reservations is voidable as tending to hinder, delay, and defraud creditors. *Van Nest* v. *Yoe*, 1 Sandf. Ch. 4. But we need not consider this question further, for we understand that this conclusion is not controverted. The deed of December 5, 1878, was never recorded in this State, and the defendants do not claim under it. They claim under the two deeds of March

21 and 22, 1879, the joint deed of the members of the firm of Sackett, Davis & Co., and the individual deed of Sackett. When these deeds were offered in evidence, the plaintiff made against each of them the following objections: First, that it was not recorded in Providence, Rhode Island, until subsequent to the levy of the attachment in Missouri; second, that it was not recorded in St. Louis, Missouri, until after the levy of such attachment; third, that it has never been acknowledged and recorded as required by the statute of Missouri; fourth, that it contains no description of the property in controversy; fifth, that at the time of making it, the grantor or grantors had no title, interest, or estate in the property which they thereby attempted to convey; and, sixth, that it was made in fraud of creditors. The record contains the absurd and contradictory statement that these objections were sustained and the plaintiff excepted, and that they were overruled and the defendants excepted. As they were the plaintiff's objections, if they had been sustained he would not have excepted; and if they had been overruled, the defendant would not have excepted. So that we really do not know whether the deeds were admitted in evidence or excluded. But as the record shows that a declaration of law was asked for, and refused, which related to their legal effect, we are entitled to assume that they were admitted.

Three declarations of law were asked for by the defendants and refused. The first was, that if the real estate in controversy was included in the deed of December 5, 1878, there must be judgment for the defendants. The third declared that this deed was not void on its face as to creditors. As this deed was void on its face under the law of Missouri, for reasons already stated, there was no error in refusing these declarations of law.

The second declaration of law was as follows: "If the court, sitting as a jury, finds from the evidence that the deeds of March, 1879, included the property in controversy,

and were delivered to the grantees therein before the levy of plaintiff's attachment, and were duly recorded in the recorder's office in the city of St. Louis before the rendition of the judgment in the attachment proceedings, the plaintiff cannot recover in this action." This declaration of law, in connection with the objections to the deeds which were made by the plaintiff, brings before us the question of the validity and effect of these deeds, and we shall consider it with reference to those objections.

1. The first objection was not well taken, for reasons already stated. The validity and effect of the deed depend wholly upon the law of Missouri, without reference to the time when they were recorded in Rhode Island.

2. The second objection must equally fail. It is the settled law of this State that an attaching creditor is not a subsequent purchaser under our recording acts. He only becomes such from the date of his purchase under a subsequent execution; so that where a deed, good between the parties to it, is executed and delivered before the day of the levy of an attachment upon the property conveyed, and not recorded until after such levy, but duly recorded before the sale and sheriff's deed to the purchaser, it will have precedence over the attachment. *Stillwell* v *McDonald*, 39 Mo. 284; *Potter* v. *McDowell*, 43 Mo. 93; *Reed* v. *Ownby*, 44 Mo. 204; *Sappington* v. *Oeschli*, 49 Mo. 244. To the same principle are *Davis* v. *Owenby*, 14 Mo. 170; *Valentine* v. *Havener*, 20 Mo. 133; *Shaw* v. *Padley*, 64 Mo. 519. In the leading case in 14 Mo., Ryland, J., says: "I exclude creditors altogether from the above statute, believing that they were never intended to be embraced within its provisions." "These acts," said Holmes, J., "relate only to purchasers and mortgagees for value, claiming title under the same grantor, and no other can dispute the validity of the unrecorded deed." *McCamant* v. *Patterson*, 39 Mo. 110.

But it is insisted that this rule is based upon the superior

equity of a *bona fide* purchaser or mortgagee, and cannot be invoked in favor of a voluntary assignee for the benefit of creditors.   It is true that it can only be invoked in favor of *bona fide* purchasers *for value;* there is little doubt that the unrecorded deed of a mere volunteer will be postponed to the lien of an attachment.   Certainly it would not avail against à subsequently recorded conveyance.   *Foster* v. *Breshears,* 55 Mo. 22.   " To entitle him to such protection," said Bliss, J., " he must have parted with something of value, otherwise he is not injured ; and such is the spirit if not the letter of our statute, and such has been its uniform interpretation."   *Aubuchon* v. *Bender,* 44 Mo. 560, 564. Now, the assignees in a voluntary deed of assignment are not, in a narrow sense, purchasers for value.   They really part with nothing of value before they take the deed ; for the nominal consideration of $1 mentioned in such deeds is in fact never paid, and cannot be justly treated as a part of the consideration.   *Rockwell* v. *McGovern,* 69 N. Y. 294.   But it does not follow from this that they are mere volunteers.   They do not take the land conveyed in their own right and for their own benefit.   They take it upon a trust for the creditors of the grantor ; and the assumption of this trust is a valuable consideration which will support the deed ( *Thomas* v. *Clark,* 65 Me. 296), and which, as our Supreme Court has decided, makes them purchasers for a valuable consideration, in the highest sense of the term. *Gates* v. *Labeaume,* 19 Mo. 17, 26 ; *Harrison* v. *Bank,* 9 W. Va. 424.   The title acquired under a mortgage of land not recorded at the time of the levy of an attachment will prevail over that acquired by the purchaser at an execution sale subsequently had under the attachment, if the mortgage be recorded prior to the sale.   *Sappington* v. *Oeschli,* 49 Mo. 244.   Certainly the title of a preferred creditor, who takes a mortgage to secure his own debt, is not superior in equity to that of a trustee who takes for the equal benefit of all creditors.

3. Our statute relating to voluntary assignments (Wag. Stats. 150, sect. 1; Rev. Stats., sect. 354) requires that "every such assignment shall be proved or acknowledged, and certified and recorded in the same manner as prescribed by law in cases wherein real estate is conveyed." It is objected that these deeds of assignment are void because they were not acknowledged in conformity with the requirements of our statute relating to conveyances. They were acknowledged before a notary public. The original acknowledgments were defective in not stating that the persons signing the deed were known to the notary to be the persons whose names were so subscribed. Wag. Stats. 275, sect. 14; Rev. Stats., sect. 681. But it was cured two months later, and before its recordation in St. Louis, by the notary placing upon it another certificate, conforming in all respects to our statute. It is not a good objection that the persons signing the deeds did not again appear before him when he did this. It is the *fact* of an acknowledgment before an authorized officer, to whom the person making the acknowledgment is known, in the manner prescribed by the statute, which constitutes the solemnity which the statute exacts. The officer's certificate is merely the prescribed evidence of the fact. It is in the nature of a formal historical statement of a thing done; and it can make no difference, in the silence of the statute, that the thing was done at one time, and the formal history of it written at another time. "The officer," said Adams, J., referring to a case of this kind, "may voluntarily correct his certificate, or make out a proper certificate where he has given a defective one, if the facts really exist and warrant such action. If the officer refuses to make such certificate, he may be compelled to do so by *mandamus*." And this, it seems, is the only way to correct the error; for it was held in the same case that equity will not assume jurisdiction to correct such a mistake. *Wannall* v. *Kem*, 51 Mo. 150.

4. Nor do we agree with the defendants' counsel in the objection that these deeds contain no description of the property in controversy. It is true that one or two decisions are found which uphold their position. *Bellamy* v. *Bellamy*, 6 Fla. 62, 108 ; *Ryerson* v. *Eldred*, 18 Mich. 12, 14 ; *Drakeley* v. *Deforest*, 3 Conn. 272. But the weight of authority and of reason is the other way. *Pingree* v. *Comstock*, 18 Pick. 46 ; *Brashear* v. *West*, 7 Pet. 608, 614 ; *Strong* v. *Carrier*, 17 Conn. 319 ; *Clark* v. *Mix*, 15 Conn. 152, 177. The same doctrine has been frequently applied in cases of assignments of chattels, describing the things conveyed, in general terms. *Keyes* v. *Brush*, 2 Paige, 311 ; *Emerson* v. *Knower*, 8 Pick. 63 ; *Kellogg* v. *Slawson*, 15 Barb. 56, 58 (*s. c.* affirmed, 11 N. Y. 302) ; *Kevan* v. *Branch*, 1 Gratt. 274 ; *Robins* v. *Embry*, 1 Smed. & M. Ch. 207. It is a case for the application of the maxim, *Id certum est, quod certum reddi potest;* and here, as both parties claim under the assignors, there is no room to doubt that the land in question was embraced in the deed.

5. The plaintiff's counsel next insist that at the time of making these deeds the grantors had no title to convey. Their position is, that the deed of December 5, 1878, though void as to creditors, was good as against the grantors ; and they claim that it logically follows from this, that at the time of the making of these two deeds, on March 21 and 22, 1879, by which they undertook to convey to the same grantees the same property, they had nothing to convey, since they had already conveyed the property to such grantees. In the case of *Gardner* v. *Bank*, already quoted from, the Supreme Court of Rhode Island has taken this position. We entertain great respect for the judges of that court, but we cannot agree with them in this instance. The argument that the former conveyance was good between the parties to it, is of no force here, because the question does not arise between such parties. It arises between one of the parties and a creditor. This creditor, for the pur-

pose of asserting supposed rights of his own, elects to treat the first deed as void; he cannot, for the purpose of asserting the same rights, claim, in the same breath, that it is valid. He must take one position or the other, and stand upon it. If it was void, as he contends, and if he is entitled to treat it as void, the parties to it are equally entitled to treat it so. He and other creditors having elected to treat it as void, and the courts sustaining them in that view, we can conceive of no sound principle under which the parties to it are estopped from treating it in the same way. We cannot understand how it lies in the mouths of creditors to say that because their debtors have made a void deed, they are therefore estopped from making a good deed of the same property. None of the cases cited by the Rhode Island court sustain its position. They go no further than to hold that a fraudulent conveyance can only be impeached by creditors so far as is necessary to satisfy their demands, and that if the property is sold in a proceeding by creditors, and the sale produces more than enough to satisfy such demands, the residue will go, not to the fraudulent grantor, but to the grantee or his heirs. There can be no doubt of this. But this does not touch the case where, the creditors having impeached such a deed, the parties themselves elect to rescind it by making a new deed, discharged of the illegal trusts. Nor do we understand that the rule that a deed fraudulent as to creditors is nevertheless good as between the parties to it, so far operates as a penalty that a debtor who makes such a deed, perhaps without any improper motive or intent, thereby gets himself into a trap, and disables himself from afterwards making a second deed, in which he conveys his property in trust for the equal benefit of all his creditors, without any reservation in his own favor.

If the grantees in the first deed had reconveyed the property to the grantors before the execution of the second deeds, then this question could not have arisen. *Hone* v.

*Woolsey*, 2 Edw. Ch. 289.   We do not see how the making of the second deeds, by the same party to the same party, and their acceptance by the latter party, can be considered to have any other effect.   A solemn act of parties, such as this was, cannot be interpreted in a court of justice as meaning nothing.   We are bound to apply ourselves faithfully to discover its meaning; and when that meaning is discovered, we are bound to give effect to it, if not inconsistent with law.   There can be no doubt that by the making, delivery, and acceptance of the second deeds it was the intention of the parties to the first deed that the illegal trusts in the first deed should be rescinded, and that the granted property should remain in the hands of the grantees, subject to the new and valid trust which the second deeds declared.   They may have intended that the second deeds should operate as an amendment of the first, and relate back to its date.   As the first deed was never recorded in Missouri, it is not necessary for us to decide whether it had this effect or not.   It is enough for us to say that they are entitled to stand by themselves as valid deeds of assignment.

Neither is authority wanting upon this question.   It has been decided in conformity with the view we take, in Vermont, Connecticut, and Wisconsin.   *Merrill* v. *Englesby*, 28 Vt. 150, 155; *Ingraham* v. *Wheeler*, 6 Conn. 277; *Brahe* v. *Eldridge*, 17 Wis. 184.   In short, we see nothing in this transaction to take it out of the general rule, that assignments for the benefit of creditors may be revoked or corrected at any time before the rights of creditors have become fixed under them.   Burrill on Assign. (3d ed.), sect. 362; *Conkling* v. *Carson*, 11 Ill. 503; *Conkling* v. *Coonrod*, 6 Ohio St. 611, where the second instrument was not questioned.

6. But this does not finally dispose of the question whether the assignment created by these two instruments is valid under the laws of Missouri.   The two deeds of as-

signment of March 21 and 22, 1879, if executed in this State, would unquestionably be valid under our law; for the trust therein declared is in substantially the words of the first section of our Statute of Assignments. Wag. Stats. 350, sect. 1; Rev. Stats., sect. 354. The doctrine of our Supreme Court under this head is, that an assignment made by an insolvent debtor in another State, and good under the laws of such State, will be permitted to operate upon property in this State, except so far as it may conflict with our own laws or policy, or be prejudicial to our own citizens. *Bryan* v. *Brisbin*, 26 Mo. 423. And this is in conformity with the doctrine universally prevailing in other courts. *Miller* v. *Kernaghan*, 56 Ga. 155; *Moore* v. *Bonnell*, 31 N. J. L. 90; *Burlock* v. *Taylor*, 16 Pick. 335; *Atwood* v. *Insurance Co.*, 14 Conn. 555; *Richardson* v. *Leavitt*, 1 La. An. 430. This is generally placed upon a principle of comity which one friendly State exercises towards the citizens of another. Upon this principle, our Supreme Court has given effect in this State to an assignment made in another State, and valid under the laws thereof, as against an attaching creditor residing in that State. *Thurston* v. *Rosenfield*, 42 Mo. 474. It has held that this principle cannot be invoked in favor of an attaching creditor who is neither a citizen of this State nor of the State in which the assignment was made. In other words, there was no principle of comity which could require our courts to administer the law of Pennsylvania for the benefit of a citizen of Maryland; but in such a case the rights of the contestants would be determined according to our own law. *Brown* v. *Knox*, 6 Mo. 302, 306. In one aspect that is this case. The deeds of assignment were made in Rhode Island, between citizens of Rhode Island, and the attaching creditor, a corporation domiciled in Massachusetts, is asking us to administer for its benefit the laws of Rhode Island, where, as we have seen, this assignment is void. Certainly we cannot do this upon any principle of comity. On the other hand, the Su-

preme Court of Rhode Island having declared these deeds void, there is no principle of comity towards the citizens of Rhode Island upon which we are bound to declare them valid. In this respect this case is certainly anomalous. In all the other cases which we have met with where the courts of one State have given effect to assignments made in other States, such assignments were good by the laws of the States where they were made.

It is here that the real difficulty of this case seems to lie. How, it may be asked, can we give effect to a trust in Missouri, which has been vacated in the State where it was created? The essential purpose of this trust was to distribute all the trustors' property equally among their creditors. The trust has failed in the State where it originated, and where the bulk of the trustors' property is presumably situated. By the failure of the trust there, this property is remitted to the invasion of attaching creditors. Suppose the trustees were to sell the land here in controversy, would not the money become immediately subject to garnishment in their hands at the suit of creditors in the tribunals of Rhode Island? And even though the money might not be removed to Rhode Island, might not the courts of that State, by process *in personam* against the trustees, compel them to hand it over to attaching creditors?

I feel the full force of these difficulties, and my mind has wavered not a little in view of them. But it must be remembered that this question is not a question of comity or of convenience, nor can there be brought to its solution any measure of judicial discretion. It is a naked question of right. It depends for its solution upon the principle that the *jus disponendi* is essential to the very idea of property. It concerns the right of every person, whether a citizen of this State or of another State, owning property in this State, freely to dispose of that property for a just and lawful purpose; and when such property is owned by an insolvent debtor, there can be no more just or lawful purpose than a disposition of it for the equal benefit of his creditors.

As the deeds of March 21 and 22, 1879, conveying the land in controversy to the defendants Gardner, Brayton, and Matthewson, were delivered in Providence, Rhode Island, before the levy of the attachment upon it here, and as they were recorded here before the issue of execution and the sale under the judgment which followed the attachment, the defendants have shown a title superior to that of the plaintiff. As another trial could not change the result which we have reached, the judgment is reversed, and judgment is entered in this court for the defendants. All the judges concur.