W. ZUPPANN, Assignee, Appellant, *v.* L. S. BAUER, Respondent.

**May 19, 1885.**

ASSIGNMENTS—ATTACHMENTS—COMITY.—An assignment made in another state for the equal benefit of 'all creditors of the assignor, is operative upon property in this state, although such an assignment, if made in this state, would not, under the decisions of such other state, operate upon property therein.

APPEAL from the St. Louis Circuit Court, LUBKE, J. *Reversed and remanded.*
W. C. MARSHALL, for the appellant.
G. M. STEWART, for the respondent.

THOMPSON, J., delivered the opinion of the court.
On the 18th of January, 1882, Claus Albers, a resident

of the state of Illinois, brought this action in the circuit court of the city of St. Louis, against the defendant, a resident of this state. On the 2nd of October, 1883, Albers made a voluntary assignment under the laws of the state of Illinois to William Zuppann for the benefit of all his creditors alike, which assignment conveyed "all and singular his lands, tenements, and hereditaments, and all his goods, chattels, effects, and choses in action of every nature and description, of which he is now lawfully possessed and to which he may be entitled." Among his scheduled assets was a claim against this defendant under the name of Bauer & Bohle, the name under which the defendant traded, for the sum of $476.75, presumed to be the claim for which this suit is brought, which was a claim for $474, being a balance due on account. On the 5th of October, 1883, Zuppann duly qualified as such assignee. On the 7th of November, 1883, Zuppann entered his appearance in this case and moved that he be substituted as plaintiff herein. On the same day the defendant made an objection to such substitution. On the 24th of December, 1883, the court sustained the motion, and made the order substituting Zuppann as plaintiff, to which ruling the defendant saved an exception. Such proceedings were thereafter had that, on November 1, 1884, a judgment was rendered in favor of the substituted plaintiff and against the defendant in the sum of $404.43, but ordering that execution thereon be stayed until the defendant should be released from a garnishment levied in an attachment proceeding against Albers by one Leftwich claiming as a creditor of Albers. The merits of this judgment, so far as concerns the sum recovered, are not in controversy on this appeal, which is prosecuted by the plaintiff, but the matter complained of is the order staying execution.

The question in controversy will appear from the following statement of additional facts: At the trial of this cause the defendant introduced evidence tending to prove that on the 8th day of December, 1883, one Morris Leftwich brought an action in the circuit court

of the city of St. Louis by attachment, against the said Albers, upon a contract which had been assigned to the said Leftwich by J. G. Claphamson & Co.; that Leftwich on the same day caused the defendant in the case now before us to be garnisheed as a debtor of said Albers; that such proceedings were had in that cause that final judgment was rendered against Albers on the 15th of April, 1884, for $310.18, which judgment remained unsatisfied; that the proceeding by garnishment was still pending and undisposed of in the circuit court of the city of St. Louis at the date of the trial of the present action; and that the demand of J. G. Claphamson & Co., upon which the said judgment was obtained by Morris Leftwich, was not contained in the schedule of liabilites in the deed of assignment of Albers to Zuppann. This evidence was admitted against the objection of the plaintiff, who duly reserved an exception. This evidence having been submitted by the defendant, the plaintiff asked and the court refused the following instructions: "The court sitting as a jury is instructed that if it believes from the evidence that the claim sued on in this case was assigned by Albers to Zuppann before the 8th day of December, the day the garnishment was served by Leftwich on Bauer, and if Bauer had notice of such assignment before such garnishment was served (and the motion for leave to substitute Zuppann as plaintiff in this case constituted notice to Bauer), then the fact of such garnishment after such assignment, is no defence to the right of Zuppann to recover in this action."

These rulings indicate the substantial question which this record presents for decision, namely, whether an assignment made by a debtor residing in the state of Illinois of all his property wherever situated, for the equal benefit of all his creditors alike, operates to transfer personal property situated in this state to such assignee, so that it cannot be subsequently subjected to attachment by a creditor of such assignor. We have no doubt that it does. We understand the question to be concluded by decisions of the Supreme Court and of this

court. The doctrine of our Supreme Court under this head formerly was that an assignment made by an insolvent debtor in another state, which is good under the laws of such state, will be permitted to operate upon property in this state, except so far as it may conflict with our own laws or policy, or be prejudicial to our own citizens.—*Bryan* v. *Brisbin*, 26 Mo. 423.   In the late case of *Askew* v. *La Cygne Exchange Bank*, (83 Mo. 366), our Supreme Court, in an opinion by Mr. Commissioner Ewing, in which the authorities in this and in other states are examined at considerable length, held that a voluntary assignment for the benefit of all the creditors of the assignor, made in the state of Kansas, of a debt due from a citizen and resident of this state to the assignor, a resident of Kansas, passed the debt to the assignee at the time of the assignment, so as to defeat a subsequent attaching creditor of the assignor in this state, whose attachment was issued and the debtor of the assignor garnisheed after the making of the assignment. That decision must govern our decision in this case, unless some reason exists why an assignment made under the laws of Illinois should operate differently in this state from an assignment made under the laws of Kansas. It is urged that such a reason is found in the fact that an assignment made in the state of Missouri, under our statute, for the equal benefit of the creditors of the assignor, will not, under a recent decision of the Supreme Court of Illinois (*Heyer* v. *Alexander*, 108 Ill. 335), be allowed so to operate in that state.   It is argued that this is a question purely of inter-state comity, and that, as the state of Illinois refuses to extend this comity to us, we ought to retaliate by refusing to extend the same comity to her; and especially it is urged that, in view of that ruling of the Supreme Court of Illinois, we ought not to allow such an assignment made in that state, to operate upon property here to the prejudice of our own citizens. There are two answers to this position.   The first is that, if in consequence of this decision of the Supreme Court of Illinois, the comity which we extend to citizens of

other states is to be withheld from her citizens, it is for the legislature, and not for the courts, to declare this policy of retaliation.   The second is, that it does not appear from this record that Leftwich, the attaching creditor, is a citizen of this state.   Even if it did appear that he was a citizen of this state, still it does not appear that he is the owner in his own right of the demand upon which his attachment is founded; but the facts above stated will leave room for the inference that he may have been merely the trustee of J. G. Claphamson & Co., who may themselves be citizens of Illinois.   Upon these important points the record is blind, and the conclusion that a firm of creditors of Albers, residing in Illinois, assigned their claim to a resident of Missouri for the purpose of bringing the suit by attachment in our courts against property of Albers situated here, is just as consistent with the record as the conclusion that in upholding the operation of this Illinois assignment upon personal property situated in this state, we are doing something to the prejudice of one of our own citizens.

We have outgrown that juridical conception of the nature of the federal union, which places the states of the Union, in respect of the effect to be given to the laws of one state within the limits of another state, in the relation of foreign countries, such as the states of Europe bear to each other.   These states are members of one national union.   Their forms of government are, and must be, under the federal constitution, republican, and hence similar to each other.   Their people are homogeneous.   They are bound together by the closest and most constant commercial intercourse.   Their laws, both common and statute, are homogeneous in their character; so much so that the decisions of the courts of one state, upon questions of the common or statute law or of equity, are constantly cited as evidence of the law in the courts of other states; whilst in the absence of proof of the law of other states, the presumption obtains that it is the same as the law of the forum.   Such being our situation and relations *inter esse*, the doctrine which

assigns to the statutes of a sister state of the union no greater credit or comity than would be assigned to the laws of a foreign state, seems to be narrow, barbarous, and tribal. On the precise question before us this court went, in the case of the *First National Bank* v. *Hughes*, (10 Mo. App. 7), in upholding the validity of an assignment made in other states of the Union, as far, and perhaps farther than any other court has gone. I have felt several times, on recurring to that decision, that we went too far, and I regret that the case was not appealed to the Supreme Court. But we are not disposed to recede from what was said in the opinion in that case in favor of "the right of every person, whether a citizen of this state or of another state, owning property in this state, freely to dispose of that property for a just and lawful purpose;" nor can we bring our minds to doubt that we were right in saying that "when such property is owned by an insolvent debtor, there can be no more just and lawful purpose than a disposition of it for the equal benefit of his creditors." In that case we upheld, against an attaching creditor residing in another state, a transfer of land situated in Missouri, by a deed made by the owner in Rhode Island for the benefit of his creditors, even after the Supreme Court of Rhode Island had declared the deed invalid in its operation upon property in that state by reason of its being a substitute for a former deed invalid as against creditors. In deciding to uphold the Illinois assignment in question in the present case, it is not necessary to go as far as we went in that case, because this assignment is conceded to be good in Illinois. But we cannot uphold the ruling made by the circuit court in this case without distinctly overruling that case, which we decline to do.

So much of the judgment of the circuit court in this case as orders the stay of proceedings to enforce the judgment, pending the trial of the proceeding by garnishment in the case of Leftwich against this defendant, is reversed and the cause is remanded to the circuit court. All the judges concur.