## James H. Stamp v. Alanson B. Case.

*Assignment—Acceptance through agent.*

A store-keeper in Western Michigan executed an assignment for the benefit of creditors to a member of a Detroit firm to which he was indebted, the latter having previously agreed to settle up his business for him in case he had to suspend. The store-keeper delivered the assignment to an agent of the firm, who left him in possession, notified his principals by telegraph, and took the assignment to Detroit where he delivered it next day to the partner named as assignee, who was out of town when he arrived, but who on returning and receiving it, immediately indorsed his acceptance and set out to take possession. But on the day when the assignment was executed, after the agent had left the place, an attachment was levied on the debtor's goods by another creditor. In view of the previous understanding and the representative character of the agent, it was *held* that the assignment, being unconditional, took effect as soon as the agent started for Detroit and it was beyond the assignor's control, and that it was sufficiently perfected by acceptance and delivery to defeat the levy.

A schedule need not be attached to an assignment for the benefit of creditors in order to pass the property.

Error to Cass. Submitted June 11. Decided July 1.

Trover. Defendant brings error.

*Howell & Carr, Meddaugh & Driggs* and *Henry Swan* for plaintiff in error. The operation of an assignment depends upon its acceptance as well as its delivery, *Pierson v. Manning*, 2 Mich., 461; *Crosby v. Hillyer*, 24 Wend., 280; *Lawrence v. Davis*, 3 McL., 178; *Halsey v. Whitney*, 4 Mas., 215; *Wheeler v. Sumner*, id., 183; Burrill on Assignments, 280; and if a levy is made upon the goods before actual acceptance, it is a prior lien, *Johnson v. Farley*, 45 N. H., 509; *Welch v. Sackett*, 12 Wis., 243: 21 Wis., 676; *Samson v. Thornton*, 3 Met., 281; *Com. v. Thompson*, 10 Bush, 427; *Day v. Griffith*, 15 Ia., 106; *Bell v. Farmers' Bank*, 11 Bush, 39; *Goodsell v. Stinson*, 7 Blackf., 439; *Hulick v. Scovil*, 4 Gilm., 190; the doctrine that delivery to a third person for the grantee's benefit, is delivery to the grantee (*Hosley v. Holmes*, 27 Mich., 416) cannot be so applied as to work injustice to the rights of innocent parties acquired before the grantee receives the grant, *Frost v. Beekman*, 1 Johns. Ch., 297; *Van Court v. Moore*, 26 Mo., 92; *Parmelee v. Simpson*, 5 Wall., 86; 3 Washb. R. P., 309; a delivery is not valid unless it precludes recall by the grantor, *Cook v. Brown*, 34 N. H., 475; *Bank v. Webster*, 44 N. H., 268; *Brevard v. Neely*, 2 Sneed, 171; *Kelly v. Roberts*, 40 N. Y., 440; creditors have no right of action against an assignee for their benefit, until a privity of contract arises between them by his acceptance of the trust, *Williams v. Everett*, 14 East, 595; *Harland v. Banks*, 15 A. & E. (N. S.), 717; the consideration passing from an assignee is his undertaking to perform the trust, *Thomas v. Clark*, 65 Me., 296; an assignment does not take effect unless the assignee chooses to accept it, *Miller v. Blinebury*, 21 Wis., 676.

*Harsen D. Smith* and *Norris & Uhl* for defendant in error. If a conveyance is executed to a person in his absence and without his knowledge and delivered to a third person for the grantee's use, it is good delivery, and title passes to the grantee at the time of delivery

subject to be defeated only by his refusal to accept, *Taw v. Buro*, 2 Dyer, 167 *c*; *Alford v. Lea*, 2 Leonard, 110; *Butler v. Baker*, 3 Co., 26 *b*; *Markham v. Gonaston*, Cro. Eliz., 627; *Thompson v. Leach*, 2 Ventris, 198: 1 Showers' Parl. Cas., 150; *Cleavering v. Cleavering*, 2 Vern., 473; *Exton v. Scott*, 6 Sim., 31; *Fletcher v. Fletcher*, 4 Hare, 67; Shep. Touch., 57, 58, 72; *Doe v. Knight*, 5 B. & C., 671; *Belden v. Carter*, 4 Day, 66; *Woodward v. Camp*, 22 Conn., 461; *Buffum v. Green*, 5 N. H., 71; *Hatch v. Hatch*, 9 Mass., 307; *Mather v. Corliss*, 103 Mass., 568; *Pennel v. Weyant*, 2 Harr. (Del.), 501; *Read v. Robinson*, 6 W. & S., 329; *Webb v. Dean*, 21 Penn. St., 29; *Duer v. James*, 42 Md., 492; *Skipwith v. Cunningham*, 8 Leigh (Va.), 271; *Moore v. Collins*, 3 Dev., 126; *Dargan v. Richardson*, 1 Cheves L., 197; *Mallory v. Stodder*, 6 Ala., 801; *Burt v. Cassety*, 12 Ala., 734; *Wall v. Wall*, 30 Miss., 91; *Rutledge v. Montgomery*, 30 Ga., 899; *Kerr v. Birnie*, 25 Ark., 225; *Inlow v. Com.*, 6 T. B. Monr., 72; *Stewart v. Weed*, 11 Ind., 92; *Henrichsen v. Hodgen*, 67 Ill., 179; *Mitchell v. Ryan*, 3 Ohio St., 377; *Rathbun v. Rathbun*, 6 Barb., 98; *Brown v. Austen*, 22 How. Pr., 394; *Church v. Gilman*, 15 Wend., 656; *Adams v. Adams*, 21 Wall., 185; 3 Washb. Real Prop., 264; *Ellis v. Secor*, 31 Mich., 185; *Wallace v. Harris*, 32 Mich., 397; *Ins. Co. v. Curtis*, id., 403; *Thatcher v. St. Andrew's Church*, 37 Mich., 264; *Cooper v. Jackson*, 4 Wis., 553; *Wesson v. Stephens*, 2 Ired., Eq., 557; *Hatch v. Bates*, 54 Me., 136; *Stephens v. Huss*, 54 Penn. St., 20; *Rivard v. Walker*, 39 Ill., 413; *Eyrick v. Hetrick*, 13 Penn. St., 494; *Curry v. Pankham*, 1 N. H., 353; *Buffum v. Green*, 5 N. H., 71; *Jackson v. Dunlap*, 1 Johns. Cas., 114; the doctrine of presumed assent applies to assignments for the benefit of creditors (*Liggers v. Evans*, 32 Eng. L. & Eq., 139; *M'Kinney v. Rhoads*, 5 Watts, 343; *Seal v. Duffy*, 4 Penn. St., 274; *Tompkins v. Wheeler*, 16 Pet., 106; *Grove v. Brien*, 8 How., 429) whether the assignee is a creditor or not, *Wilt v. Franklin*, 1 Binn., 502; *McLean v. Nelson*, 1 Jones (Law), 396; the assignee's

assent will be presumed and title will pass to him at the time of first delivery, even though creditors of the assignor levy on the property between the time of the first delivery and the actual receipt and acceptance by the assignee, *Merrills v. Swift*, 18 Conn., 257; *Tibbals v. Jacobs*, 31 Conn., 428; *Myrover v. French*, 73 N. C., 609; *Ensworth v. King*, 50 Mo., 477; a grantee's assent or acceptance of a deed for his benefit will be presumed, though he be ignorant of the deed, unless there are facts to rebut the presumption, *Jackson v. Phipps*, 12 Johns., 421; *Verplank v. Sterry*, 12 Johns., 550; *Jackson v. Bodle*, 20 Johns., 187; *Wheelwright v. Wheelwright*, 2 Mass., 447; *Hatch v. Hatch*, 9 Mass., 307; *Ruggles v. Lawson*, 13 Johns., 285; *Hedge v. Drew*, 12 Pick., 141; *Barns v. Hatch*, 3 N. H., 304; *Maynard v. Maynard*, 10 Mass., 456; *Herbert v. Herbert*, 1 Breese, 282; *Chess v. Chess*, 1 Penn., 32; *Beers v. Broome*, 4 Conn., 247; acceptance by an assignee is not necessary to the validity of an assignment for the benefit of creditors, *Brevard v. Neely*, 2 Sneed, 164; *Dawson v. Dawson*, Rice Ch., 243; *Harris v. Rucker*, 13 B. Mon., 564; *Field v. Arrowsmith*, 3 Humph., 442; *Furman v. Fisher*, 4 Coldw., 626; *Barcroft v. Snodgrass*, 1 Coldw., 439.

GRAVES, J. This case involves a contest between an assignee for creditors on the one hand, and certain attaching creditors on the other, and the question is, which first took effect,—the assignment or the levy of the attachment.

The fairness and good faith of the assignment are not disputed, and no objection is urged against the regularity of the attachment proceedings. The determination depends finally on the answer to this question: Were the acts concerning delivery of the assignment such as to bind the property prior to the attachment levy? The defendant in error claims that they were, and the plaintiff in error that they were not.

The subject was discussed at the bar with much

learning and ability, and many authorities were cited. We shall not attempt an examination and comparison of cases. A full and critical review would require much time and space, and a partial examination would not be useful. The view taken is supposed to bring the case within principles generally admitted. There is no controversy about the facts, and their meaning is not doubtful.

November 19, 1878, Nelson J. Huber was engaged in merchandising at Marcellus, in Cass county. He had been so engaged for some time previously. He was in debt to Charles Root & Co., of Detroit, in the sum of $2,400; to R. & J. Cummings & Co., of Toledo, in the sum of $1,000; to Johnson & Wheeler, of Detroit, in the sum of $300; and to Barkman & Thorp, of Three Rivers, in the sum of $12, and to no others. These debts were all due.

Between two and three o'clock of that day the plaintiff in error, being sheriff of the county, levied an attachment in favor of R. & J. Cummings & Co. on the goods in Huber's store, and found Huber in possession. He informed the sheriff that he had assigned to Case, and was holding for him. Case subsequently brought this action of trover on the sheriff's seizure, and recovered.

We may now turn to matters connected with the giving of the assignment. About two weeks before the attachment, Case who was one of the firm of Charles Root & Co., met Huber and conversed with him about his affairs. His business embarrassment was talked about, and Case desired that he would consult him in the event of his becoming so pressed that he could not continue, and Huber then made request that he would settle up his matters in case it was found necessary to suspend business, and Case then promised he would do so. He told Huber that "if it became necessary he would settle his business up for him; that he should do nothing without consulting him, and not lose his nerve

and give any mortgage to Cummings & Co." An assignment was not in terms mentioned.

Early on the day of the attachment—November 19th—and before its issue, the firm of defendant in error, Charles Root & Co., sent their salesman and agent, Leonard, to Huber at Marcellus to get their debt secured. No instructions seem to have been given concerning the way to be taken or the security to be obtained. The agent was left to act according to his judgment of the circumstances.

Leonard, as representative of the firm of defendant in error, for this purpose requested Huber to give a mortgage. He declined to do that, and proposed to make an assignment for the benefit of all his creditors. Yielding to this suggestion as an offer of security, Leonard then requested that Case should be constituted assignee, and Huber assented. The assignment was then drawn with Case named as assignee. Huber executed it in presence of Leonard and another and acknowledged it. It contemplated that schedules would be attached, but none were supplied until several days afterwards. They were not necessary to pass the property. As soon as the instrument was acknowledged, Huber handed it to Leonard, with instructions to take it to Case. Huber took Leonard to the store and showed the property to him, and Leonard thereupon instructed Huber to keep on selling and keep an account of what he sold. Both appear to have assumed that the property was subjected to the assignment. Leonard left immediately for Detroit, and on reaching Decatur, a few miles from Marcellus, informed his principals, the firm of defendant in error, by telegraph, that Huber had assigned to Case.

He reached Detroit the next morning, November 20th, and went to the store of the firm. Case had been up the river and returned about noon of that day. Leonard at once handed the assignment to him and told him of his appointment, and he, without any

delay or hesitation, assumed the trust and proceeded to Marcellus on the first train to carry it out. He took the precaution to subscribe an acceptance on the instrument. One of the reasons for his acceptance of the trust was his previous promise to Huber. Leonard states that he did not assume to act as Case's agent in taking the assignment, and did not assume to accept for him; that he acted for the firm.

The preparation of the assignment, and the execution and giving of it into Leonard's hands, and his departure for Detroit, preceded the levy of the attachment between two and three hours, and the arrangement between Huber and Case to meet the contingency of Huber's being unable to go on, occurred between two and three weeks earlier.

In the opinion of the court it results from these facts that the assignment took effect as soon at least as the time when Leonard proceeded with it for Detroit. Huber had parted with the possession and control of it; had placed it unconditionally in Leonard's hands, to be immediately subject to Case's disposal, and with the design that it should pass the property presently. There was no qualification and no reserve. The actual transit of the paper from Huber to Case might occupy a few moments or a few hours, but as the symbol of conveyance it had gone beyond Huber's control. As Leonard represented the firm he represented the entire membership of the firm, and through him the firm and its membership also sanctioned what was done. Case was a member, and as such his sanction was given, and as such he was interested in having the assignment executed, and interested, presumably, in having it executed by himself. At the same time he was the firm nominee to execute it, and in view of the previous understanding between himself and Huber we think he was in effect self-nominated. The fair import of that understanding was, we think, that in case there should be occasion, he

would act as assignee, and the proper sense of it was equivalent to an assent in advance. It was not necessary that an assignment should be mentioned in terms. The understanding manifestly referred to that kind of extremity in which an assignment is usually resorted to for the purpose of settling matters, and plainly contemplated the acceptance of that position by Case which he would naturally have to take to settle up business in the ordinary course, namely, the position of assignee. When Leonard started for Detroit with the instrument it was in his hands with the concurrence of Huber, and of the creditor firm of Charles Root & Co. and of the trustee Case, in his character of member of that firm and in his individual character, and in order that it might have operation and be fully executed.

According to this view the jury were justified in finding that the assignment took effect before the levy, and the judgment should be affirmed, with costs.

CAMPBELL, C. J., and MARSTON, J., concurred.

COOLEY, J. I concur in the result.