HENRY RENDLEMANN, Appellant, *v.* L. A. WILLARD, P. V. N. DAVIS ET AL., Respondents.

April 15, 1884.

1. ASSIGNMENTS — ACCEPTANCE OF TRUST. — The beneficial interest of the creditors under an assignment for their benefit completely vests as soon as the deed of assignment is recorded, irrespective of whether the assignee accepts the trust.

2. —— TITLE OF ASSIGNEE. — The title may pass to the assignee before the giving of the bond, although the exercise of authority over the property be suspended by operation of the statute until bond is given.  .       ,

3. —— ACKNOWLEDGMENTS. — It is not necessary, under the Illinois statute, which provides that "every assignment shall be acknowledged and recorded in the county where the person making it resides," that the acknowledgment should be taken in the county where the assignor resides.

4. —— EVIDENCE — ADMISSIONS — RECORD. — An admission, at the trial, that a deed of assignment is recorded is an admission that all things necessary to be done, before it can be recorded, have been done.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.* .

JONES & DELANO and McKEIGHAN & JONES, for the appellant ; M. C. CRAWFORD, of counsel : An acceptance by the assignee is as necessary to give validity to the assignment as is the delivery by the assignee. — Burrill on Assignments, 384 ; *Jackson* v. *Phillips*, 12 Johns. 418.   No title vested in assignee until he had accepted the trust and given bond, and the appellant, by his attachment acquired a lien. — *Crosby* v. *Hillyer*, 24 Wend. 280 ; *Pierrepont* v. *Manning*, 2 Mich. 446, 462 ; *Siggert* v. *Evans*, 32 Eng. L. & Eq. 139.

W. B. HOMER and W. S. DAY for the respondents : The title passed to the assignee upon the delivery of the deed of assignment and prior to the giving of bond by the assignee. — *Freydendale* v. *Baldwin*, 103 Ill. 328 ; *Eiks* v. *Copeland*, 53 Texas, 591 ; *Fuller* v. *Hasbrook*, 46 Mich. 81 ; *Swait* v. *Thomas*, 26 Minn. 81 ; *Brennan* v. *Wilson*, 71 N. Y. 502 ; *Hardcastle* v. *Fisher*, 24 Mo. 74 ; *Wooster* v. *Stanfield*, 11 Iowa, 128 ; *Edmonson* v. *Harris*, 2 Tenn. Ch. 435 ; *Heckman* v. *Messinger*, 49 Pa. St. 465.   The appellant having proved his claim against the assigned estate, can not now attack the assignment. — *Valentine* v. *Decker*, 43 Mo. 583 ; *Gutzwiller* v. *Lackman*, 23 Mo. 172 ; *May* v. *Wannemaker*, 111 Mass. 208; *Chaffee* v. *Bank*, 74 Me. 514.

LEWIS, P. J., delivered the opinion of the court.

On July 25, 1882, the plaintiff instituted this suit by attachment against E. A. Willard, and on the same day caused the Bank of Commerce to be summoned as garnishee. The bank answered, and paid into court the sum of $1,062.61. Philip V. N. Davis and William C. Rich, Sr., interpleaded, claiming the money. The issues on the interplea were submitted to the court on the following agreed statement of facts: —

1. On the 18th day of July, 1882, the said defendant, Elijah A. Willard, executed a certain assignment or conveyance, a copy of which is hereto attached, marked Exhibit A, and made a part of this agreement; and on the 21st day of July, 1882, by direction of said Willard, defendant, the said conveyance or assignment was, by the wife of said Willard, delivered to one of the assignees therein named; and the plaintiff, Henry Rendleman, had both actual and constructive notice of the making and recording of the said assignment or conveyance, which said notice he received about eight o'clock on the morning of the 22d day of July, 1882, at which time the said conveyance was placed on file for record in the recorder's office of Union County, Illinois.

2. On July 24, 1882, the assignees named in said conveyance declined and refused to accept the trust therein delegated, and on the same day — to wit: on the 24th aforesaid — the county court of Union County, Illinois, entered an order appointing Philip V. N. Davis and William C. Rich, Sr., the interpleaders herein, assignees or trustees in the place of the assignees or trustees named in said conveyance; and they, the said Philip V. N. Davis and William C. Rich, Sr., on the 31st day of July, 1882, executed and filed in the office of the county clerk of Union County the necessary bond and oath of office.

3. That Elijah A. Willard is indebted to and owes Henry

Rendleman, the plaintiff, the sum of $14,039.88, after allowing all credits, deductions, and offsets.

4. All laws of the State of Illinois may be considered by the court the same as if offered in evidence.

5. That the claim herein sued upon by plaintiff is for the same sum and for the same indebtedness as the claim filed with and allowed by the said assignees of the estate of Elijah A. Willard, and referred to in the exhibits hereto attached.

6. The certified records of the county court of Union county, Illinois, marked Exhibits B, C, and D, hereto attached, and made a part of this agreement, is a complete record of all the proceedings in said court touching the appointment of such interpleaders as assignees or trustees, and of the allowance and filing of claims with said assignees and court, and of the orders of said court in reference to the payment of dividends.

7. It is agreed that all parties to this record (except the Bank of Commerce) are citizens and residents of the county of Union and state of Illinois, as also were the parties named as assignees in said assignment or conveyance.    *    *    *

" Also, that prior to the execution of the assignment or conveyance, marked Exhibit A, the money or property in controversy was in the hands of the garnishee, and was the money and property of the defendant.   Also, that the defendant was at the time of the commencement of this action not a resident of the state of Missouri."

Inasmuch as the assignment, if effectual for any purpose, was a voluntary transfer, and the parties concerned were all residents of Illinois, the validity of the transfer, and the time when it took effect, must be determined by the laws of that state.   If the change of ownership were to be effected *in invitum*, as to money or property in Missouri, a different rule might be applied.   Story's Confl. Laws, 411.

Section 12 of the Illinois statutes concerning "Assignments for Benefit of Creditors," reads as follows : —

" That in case any assignee shall die before the closing of his trust, or in case any assignee shall fail or neglect for the period of twenty days after the making of any assignment, to file any inventory and valuation, and give bonds as required by this act, it shall be the duty of the county judge of the county where such assignment may be recorded, on the application of any person interested as creditor or otherwise, to appoint some one or more discreet and qualified person or persons to execute the trust embraced in such assignment ; and such person or persons on giving bond with sureties as required above of the assignee or assignees named in such assignment, shall possess all the powers thereby and by this act conferred upon such assignee or assignees, and shall be subject to all the duties hereby imposed, as fully as though he or they are named in the assignment ; and in case any security shall be discovered to be insufficient, or on complaint before the county court it shall be made to appear that any assignee or assignees are guilty of wasting or misapplying the trust estate, said county court may direct and require the giving additional security, and may remove such assignee or assignees, and may appoint others in their stead to fulfil the duties of said trusts, and such persons so appointed, on giving bond, shall have full power to execute such duties and to demand and sue for all estate in the hands of the person or persons removed, and to demand and recover the amount and value of all moneys and property or estate so wasted and misapplied which he or they may neglect or refuse to make satisfaction for, from such person or persons and his or their sureties." Hurd Rev. 146.

If, as the plaintiff contends in his interpretation of this statute, the assignment never took effect until the filing of the bond by the newly appointed assignees on July 31st, the garnishment of July 25th should prevail, and the judgment

of the circuit court was wrong.   But if, as the interpleader maintains, the assignment went into operation as a transfer of the defendant's property, either when delivered to one of the assignees on the 21st or when recorded on the 22d, the attachment and garnishment on the 25th were ineffectual to disturb the transfer, and the judgment was for the right party.

It is true, as a general rule, that no transfer will take effect, in law, until acceptance by the transferee.   The law binds no man to acceptance, without his consent.   But there are many cases in which, by reason of the nature of the transaction, the condition of the parties, or some statutory provision, an acceptance will be presumed without direct proof of the fact.   The basis of this presumption is usually found in the beneficial nature of the transaction, to the transferee.   Grants to infants, or to insane persons, are so treated, although the grantee may be incapable of actual acceptance.   So also, as to conveyances for the security or satisfaction of *bona fide* creditors, the creditors' acceptance may be presumed, although it may not appear that they had any knowledge of the transaction.   At the same time, however, it is not to be disputed that direct proof of a refusal to accept by one *sui juris* will always prevail over the presumption.

Several cases concerning assignments for the benefit of creditors are reported, in which the assignee hesitated about accepting the trust or distinctly deferred his acceptance for further consideration.   In such cases it has been held that an attachment intervening between the tender of the instrument and the actual acceptance by the assignee, would prevail over the assignment. *Pierson* v. *Manning*, 2 Mich. 445 ; *Crosby* v. *Hillyer*, 24 Wend. 280.   But we find no recent case in which a like result followed, where the presumption of acceptance had once fairly attached, even though the assignee immediately afterwards recanted, or refused to proceed.   It is universal that when an instrument creat-

ing mutually agreed rights or interests between parties has once gone into operative effect, no act of one party, inconsistent with the intent of the instrument, can make it inoperative from the beginning. The vital question before us, therefore, is, whether by any intendment of law, the assignment in the present case went into operative effect before the service of garnishment? Counsel for the plaintiff say, that the first response from the assignees named in the deed, was a refusal of the trust. Yet it may be that the refusal came too late to avoid the transfer already effected.

The agreed statement of facts shows, that the deed was handed to one of the assignees on the 21st. Nothing is said of his declining, or even hesitating to accept, at that time. It would be no departure from authoritative precedents to hold that the deed took effect by a legal presumption of acceptance, upon that delivery. See *Stamp* v. *Case*, 41 Mich. 267. But there are still other grounds for holding to the priority of the assignment, in this case, which may be more satisfactory. Whenever a special law requires the recording of assignments for the benefit of creditors, that act of publicity is understood to vest in the creditors, or beneficiaries, certain rights which can not be divested by any act or omission of the assignee. Nothing thus far appears to rebut the legal presumption of their acceptance. The existing condition thus opens the way for an application of the maxim that a trust will never be permitted to fail for want of a trustee. It results as an unavoidable conclusion that, after the recording, a refusal of the trust by the assignee will leave the assignment intact, while it will devolve upon the proper tribunal the duty of vitalizing the trust by appointing a trustee. Such is the doctrine now concurred in by the leading authorities. *Mark's Appeal*, 85 Pa. St. 231; *Read* v. *Robinson*, 6 W. & S. 329; *Blight* v. *Schenck*, 10 Barr, 285; *Johnson* v. *Herring*, 10 Wright,

415; *Garnons* v. *Knight*, 5 B. & C. 671; *Lloyd* v. *Bennett*, 8 C. & P. 124. A contrary rule would be prolific of evil consequences. As was said by Strong, J., in *Johnson* v. *Herring* (*supra*): "If, in case of voluntary assignments, it is necessary to look beyond the deeds themselves to know when they became operative, a wide door is opened for establishing secret trusts, which it was the manifest purpose of the legislature to restrain. Nor is there any hardship in adopting such a construction. The assignment may be placed upon record by the assignors, or by any one having a legal or beneficial interest." An elementary writer of high reputation deduces from the adjudications that: "The moment an assignment is placed by the assignor, or any one interested, in the office of the recorder of deeds, the beneficial interest of the creditors, — the *cestuis que trust*, — is completely vested, and it is totally immaterial when the assignee accepts the trust, or whether he ever accepts it." Burrill on Assignments, sect. 259. The agreed statement shows that, in this case, the assignment was filed for record in the proper office, on July 22d, and that the plaintiff's attachment was not issued until the 25th. The refusal of the trust by the assignee was on the 24th, or two day's after the filing of the instrument for record.

It is objected for the plaintiff that the assignment was not acknowledged in accordance with the statute, which requires that, "every assignment shall be duly acknowledged and recorded in the county where the person or persons making the same reside," etc. The exhibit filed shows that the acknowledgment was taken by a notary in the city of St. Louis. While a literal interpretation of the statute might hold that both the acknowledgment and the recording must be in the county where the parties reside, yet it would be most unreasonable to treat the statute as mandatory in both particulars. The essential fact is the recording; and the place where this is done is also essential, as calculated to impart

notice to the proper persons ; but the acknowledgment before a proper officer will be alike efficacious, wherever taken, to inform the recording officer that the instrument is genuine, and to give the same assurance to all others interested. Another Illinois statute, which is also before us under the agreed statement, provides that instruments acknowledged in conformity with the laws of any foreign state, kingdom, empire, or country, "shall be deemed as good and valid in law as though acknowledged or proved in conformity with the existing laws of this state." Hurd Rev. Stat. p. 270, sect. 23. We think there was a sufficient, substantial compliance with the statute, in this instance, to validate the recording of the assignment. But were this otherwise, the plaintiff here is not in a position to raise the objection. His agreed statement declares that the instrument was recorded. If this means anything, it means that it was properly recorded. No suggestion of insufficiency appears in the agreed statement, and the court must apply the law to the facts, only as they are stated by the parties. It is understood, of course, that the objection of insufficiency in the acknowledgment goes to the propriety of the recording, and not to the validity of the instrument otherwise.

Counsel for the plaintiff, in their carefully prepared brief, disavow all questions of "the validity or regularity of the deed of assignment," but hold that the assignee of the estate, even if legally appointed, acquired no title until July 31st ; that is, the conveyance did not go into effect until that date.

It may be true that, under the statute, the newly appointed assignees could not exercise any powers as such, until after giving bonds. But it does not thence follow that the assignment had not taken effect to divest the property out of the assignor. It must have so taken effect. For that is the material and causative fact which is to vest

in the assignees the authority they may exercise over the property after giving bond as the statute directs. Such an authority could never arise, but for the taking effect of the assignment. Its active exercise, however, is simply suspended, for the time being, by operation of the statute. Ownership in property (except relatively as to the personality of the owner) can not be temporarily non-existent; or, as learned counsel express it, "*in nubibus.*"

In *Thrasher* v. *Bently* (1 Abbott, (N. C.) 39), objection arose that the assignee's bond was not approved by the proper officer. Said Folger, J.: "Even if the bond be invalid for that reason, and the same is no bond, yet the assignment is not thereby rendered void. The title to the trust property has vested in the trustee. By the provisions of the act of 1860 the giving of a bond is not a prerequisite to the validity of the assignment. Thirty days are given after the date of the assignment for the entering into a bond. But in the meantime the title to the assigned property is not in the debtor, nor is it in abeyance. It is in the assignee, who is forbidden only to sell or dispose of it, or convert it to the purposes of the trust." See also *Hardcastle* v. *Fisher*, 24 Mo. 70; *Bank* v. *Hughes*, 10 Mo. App. 7.

We have carefully examined the authorities cited by counsel, but find nothing in contravention of the views herein expressed. We are of opinion that the deed of assignment took full effect in law, before the date of the attachment and garnishment. It is, therefore, unnecessary to consider other questions presented by counsel on either side. The judgment is affirmed. All the judges concur.